**Calin Mugur OPREAN, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 01–04–00461–CR.

Court of Appeals of Texas, Houston (1st Dist.).

March 1, 2007.

Discretionary Review Refused Aug. 22, 2007.

Edward M. Chernoff, Houston, for appellant.

Charles A. Rosenthal, Jr., Dist. Atty.–Harris County, William J. Delmore III, Asst. Dist. Atty., Houston, for appellee.

Panel consists of Justices NUCHIA, KEYES, and HIGLEY.

## OPINION

LAURA CARTER HIGLEY, Justice.

A jury found appellant, Calin Mugur Oprean, guilty of the third-degree felony offense of driving while intoxicated ("DWI") and assessed punishment at five years' confinement and a $5,000 fine.[1] This Court affirmed the trial court's judgment on original submission. *See Oprean v. State*, No. 01–04–00461–CR, 2005 WL 568291, at * 5 (Tex.App.-Houston [1st Dist.] Mar. 10, 2005, pet. granted) (mem. op.; not designated for publication). On appellant's petition for discretionary review, the Texas Court of Criminal Appeals reversed this Court's judgment and remanded the cause for this Court to determine what harm, if any, was caused by the admission of a videotape during the punishment phase. *Oprean v. State*, 201 S.W.3d 724, 728 (Tex.Crim.App.2006).

After conducting the harm analysis, we reverse the trial court's judgment as to

---

1. *See* Tex. Pen.Code Ann. § 49.04(a) (Vernon 2003), Tex. Pen.Code Ann. § 49.09(b)(2) (Vernon Supp.2006).

punishment and remand for a new punishment hearing.

## Background

In its indictment, the State alleged that appellant was driving while intoxicated on October 19, 2003. Elevating the offense to a third-degree felony, the indictment also listed two prior DWI convictions: one from 1999 and one from 2002. Pretrial, the defense requested and the trial court signed a discovery order, which, in relevant part, ordered the State to furnish "all videos and tape recordings that contain the defendant's voice" to the defense "(10) ten days prior to trial."

At the end of the guilt-innocence phase, the jury found appellant guilty as charged in the indictment. The evening before the punishment phase was to begin, the prosecutor told defense counsel that she would introduce the judgments and sentences from the 1999 and 2002 DWI convictions. She made no indication that any other evidence relating to the prior DWI's would be introduced.

The next morning, immediately before the punishment phase began, defense counsel noticed a police officer in the courtroom, who was not associated with the case. Upon questioning the prosecutor about the officer, the defense, for the first time, learned that the State intended to introduce the scene video from appellant's 2002 DWI conviction. The prosecutor explained that the police officer was the sponsoring witness for the video. The video, shot from the patrol car of the arresting police officer, showed the officer following appellant's car, the officer pulling appellant's car over, appellant taking the field sobriety tests, and the officer arresting appellant for DWI.

At the beginning of the punishment phase, the defense objected to the introduction of videotape and the sponsoring officer's testimony, arguing, *inter alia,* that the State had violated the discovery order. The prosecutor responded that she believed the discovery order did not require disclosure because it covered only witness testimony during the State's case in chief and because the order contained "no [Code of Criminal Procedure article 37.07(g)] charge," nor had the defense made an article 37.07 request.

The trial court denied the defense's objection to the videotape and to the officer's testimony. Defense counsel then requested a one-day continuance to view the videotape and prepare his trial strategy. Defense counsel told the trial court that he was surprised by the videotape, particularly in light of the prosecutor's comments made the night before indicating that the State's only evidence would be the two earlier judgments and sentences. Defense counsel explained to the trial court that he had been in the courtroom with the prosecutor a couple of hours that morning waiting for the punishment hearing to begin and had not learned of the video. Rather, the prosecutor told defense counsel about the video only minutes before the punishment hearing when he questioned her about the officer's presence. Despite defense counsel's claim of surprise, the trial court denied the request for a continuance.

This Court affirmed the conviction on original submission concluding that the prosecutor had not willfully violated the discovery order, as claimed by appellant. *See Oprean,* 2005 WL 568291, at *5. On appellant's petition for discretionary review, the court of criminal appeals held that the trial court abused its discretion by admitting the videotape because the prosecutor had willfully violated the discovery order. *Oprean,* 201 S.W.3d at 728. As a result, the court of criminal appeals reversed this Court's judgment and remanded the cause for this Court to determine

what harm, if any, was caused by the admission of the videotape during the punishment phase. *Id.*

## Harm Analysis

■ We disregard error in the admission of evidence unless it affects the defendant's substantial rights. *See* TEX.R.APP. 44.2(b). A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex.Crim.App.1997).

In this case, the question arises how to apply this standard. Here, appellant did not complain on appeal that the videotape was substantively inadmissible, rather, he complained, as he had in the trial court, that the videotape should not have been admitted because the State did not comply with the discovery order. Thus, the harm that we review is the harm caused by the State's violation of the discovery order. *See McDonald v. State*, 179 S.W.3d 571, 578 (Tex.Crim.App.2005) (reviewing only harm caused by lack of Rule of Evidence 404(b) notice because appellant objected only to lack of notice, not to admissibility of evidence). In so doing, we take into consideration the intended purpose of the discovery order: to prevent surprise and to permit appellant to prepare an adequate defense. *See Hernandez v. State*, 176 S.W.3d 821, 825 (Tex.Crim.App.2005) (concluding that purpose of Rule 404(b) notice provision of preventing surprise is valid consideration in conducting Rule 44.2(b) harm analysis); *see also Ford v. State*, 73 S.W.3d 923, 926 (Tex.Crim.App.2002) (focusing on purpose of violated jury-shuffle statute in conducting Rule 44.2(b) harm analysis). Practically speaking, we must analyze how the State's failure to comply with the discovery order affected appellant's ability to prepare for the videotape and to formulate his defense strategy. *See*

*Hernandez*, 176 S.W.3d at 825–26 (analyzing how State's failure to provide Rule 404(b) notice of various extraneous offenses offered by State and admitted by trial court affected appellant's ability to prepare for offer of extraneous offenses); *see also Jackson v. State*, 17 S.W.3d 664, 673 (Tex.Crim.App.2000) (considering whether defense had opportunity to review offending evidence and to cross-examine sponsoring witness in determining whether appellant was prejudiced by evidence admitted in violation of discovery order).

In this case, the defense's "claim of 'surprise' is not only plausible, it is compelling." *Oprean*, 201 S.W.3d at 730 (Cochran, J., concurring). The defense had no opportunity to view the videotape before the punishment phase began, nor did the defense even know of the videotape's existence. The videotape showed appellant in an *obviously intoxicated state, unable to* perform the field sobriety tests.

The defense did not learn of the videotape until minutes before the punishment phase began. The prosecutor's affirmative statements the night before lulled the defense into believing that the only evidence the State planned to offer were the judgments and sentences from the two earlier DWI convictions. Undoubtedly (and rightfully), the defense relied on such representation when developing its defensive strategy for the punishment phase. The defense's request for a continuance to view the videotape was denied by the trial court, despite its argument that the videotape was a complete "surprise," which left it unprepared. The defense, the jury, and the trial court all viewed the videotape for the first time together as it was published to the jury.

As a result, defense counsel had no opportunity to determine the import of the video, to craft a meaningful cross-examination of the sponsoring witness, to develop a

defensive strategy to ameliorate the effect of the videotape, to consult with his client, or to offer mitigating evidence.[2] Given these circumstances, the record shows that the defense was surprised by the videotape and denied its right to mount a defense against it.

The videotape was also harmful from the standpoint that it was the only scene video admitted at trial, depicts appellant in an obviously intoxicated state, and was emphasized by the State during closing argument. Specifically, during summation at the punishment phase, the prosecutor argued to the jury,

> The video that you saw, yes, he pled guilty to that. Yes, he did. But what does that show you? It shows you what kind of condition—'cause we didn't have a video in this case. It shows you what kind of condition he's out there driving on the streets with the citizens of Harris County.

> He's driving on the streets. You can watch [the video] again if you want.

The prosecutor then remarked on what was depicted in the videotape and told the jury, "That's why I showed you. You need to see what condition he's out there driving in. It's dangerous. It kills—DWI kills thousands of people."

The State points out that other evidence admitted at trial established that appellant had four earlier DWI's for which he received either probation or minimal jail time and had crashed his car into a cement barricade in the course of committing the most recent DWI offense. Although the jury likely considered it in assessing punishment, this evidence does not necessarily dilute the effect that the erroneously admitted videotape had on the jury's verdict.

Indeed, "the powerful impact of videotape on jurors has been recognized." *In re S.P.*, 168 S.W.3d 197, 210 (Tex.App.-Dallas 2005, no pet.) (citing *Ochs v. Martinez*, 789 S.W.2d 949, 956 (Tex.App.-San Antonio 1990, writ denied) (noting that videotape "makes a more lasting and intense impression on jurors than other forms of proof")). Moreover, the videotape's effect on the jury's verdict was undoubtedly heightened in this case by the defense's inability to defend against it in any way due to the State's violation of the discovery order.

For these reasons, we conclude that the admission of the videotape had a substantial and injurious effect or influence in determining the jury's verdict, i.e., appellant's sentence. *See* Tex.R.App. P. 44.2(b); *King*, 953 S.W.2d at 271. Accordingly, we hold that appellant was harmed by the admission of the videotape.

## Conclusion

We reverse the trial court's judgment as to punishment only and remand for a new punishment hearing.

---

2. Defense counsel's surprise and unpreparedness may have been exacerbated by the fact that no scene video was introduced for the most recent DWI, which triggered the third-degree felony charge. Thus, the defense had no reason to integrate challenges to scene videos into its trial strategy either generally or specifically.