

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-19-00237-CR

_____

JIMMIE LEE HANCE, III, Appellant

V.

THE STATE OF TEXAS

On Appeal from the 90th District Court
Young County, Texas
Trial Court No. 10943

Before Kerr and Birdwell, JJ.; and Lee Ann Dauphinot (Senior Justice, Retired,
Sitting by Assignment).
Memorandum Opinion by Justice Dauphinot

**MEMORANDUM OPINION**

A jury convicted Appellant Jimmie Lee Hance III of aggravated sexual assault of a child under six years of age, pursuant to Tex. Penal Code Ann. § 22.021(a)(2)(b)(i), and assessed his punishment at fifty years' confinement. Appellant brings six issues on appeal, arguing that the trial court improperly admitted evidence of Appellant's watching and researching "daddy-daughter" role-playing, toddler molestation, and daddy-daughter molestation, and of his enjoying "daddy-daughter" role-playing with his wife; improperly denied his motions for continuance, for mistrial, and for a new trial as a result of the State's refusal to turn over Appellant's laptop to the forensic expert appointed by the trial court; and improperly denied Appellant's forensic expert access to the laptop seized from Appellant.

Because the trial court reversibly erred in denying Appellant and his expert access to the computer seized from Appellant by the State, while allowing the State to use its contents as evidence against Appellant, we reverse Appellant's conviction and remand this cause to the trial court for a new trial.

<u>Brief Facts</u>

To protect the privacy of the complainant, we refer to her and her family members by initials or by their relation to the complainant.[1]  Complainant RM was

---

[1]*See* Tex. Const. art. 1, § 30(a)(1) (granting victims of crime "the right to be treated with fairness and with respect for the victim's dignity and privacy throughout the criminal justice process"); Tex. R. App. P. 9.10(a)(3); 2d Tex. App. (Fort Worth)

2

five years old when she made an outcry to her mother, AM, that her stepfather, Appellant, had penetrated her female sexual organ with his finger and with his penis. At the time, Complainant lived with her mother, Appellant, and two brothers aged seven and nine. When RM made the outcry to her mother, AM called her own mother for advice, and her mother told her to take the little girl to the hospital in Graham, Texas. She did, and the police were called. The police instructed AM to take RM to Cook Children's Medical Center in Fort Worth for a sexual-assault nurse examination. RM was taken to Virginia's House for a forensic interview, in which she repeated and expanded on her accusations against Appellant.

Appellant was contacted, and he denied the allegations. When he returned to Young County from West Texas where he was working, Appellant was arrested. Young County Sheriff's Deputy Tim Bay interviewed Appellant, who denied he had ever done anything with any of "his kids."

Appellant testified at his trial for aggravated sexual assault, denying he had ever done anything inappropriate to any child, including his biological daughter who lived with her mother. However, RM's brothers testified they had seen Appellant commit sexual assault. And RM described genital penetration as well as oral penetration.

Appellant's sister testified she had lived with Appellant, his wife, and the children for a short while. Their apartment was small, and she could hear Appellant

Loc. R. 7; *McLendon v. State*, 643 S.W.2d 936, 936 n.1 (Tex. Crim. App. [Panel Op.] 1982).

3

and his wife having sex nearly every night. She also testified that Appellant had spent a lot of time around her children. She testified she had never seen anything inappropriate between Appellant and her children.

AM testified about Appellant's enjoying role-playing daddy-daughter sex. And she testified over Appellant's relevance and Rule 403 objections that Appellant had shown her porn sites dealing with adult daddy-daughter or daddy-stepdaughter role-playing and dealing with incest involving brother–sister sex and general-family-member sex.

AM testified that the family laptop was actually hers. Appellant used the computer and took it with him in his work truck. Over Appellant's relevance and Rule 403 objections, AM testified at length about Appellant's computer searches. She saw two searches of his that disturbed her: whether "daddy-daughter" molestation is common and what constitutes the signs of toddler molestation. She testified that she knew what topics Appellant had searched for:

> We shared an email address, so anything I Googled showed in our search engine and anything he Googled showed up in my search engine. Because we shared the same email, anything that is Googled on something that shares the same email it shows up on that other device.

Bay, who by the time of trial in April 2019 had retired from the Young County Sheriff's Department, next testified that AM had brought the family computer to him on August 24, 2017. It was "partially destroyed." Although he obtained a search warrant for the information on the computer, he could not remember whether he had

sent the computer to a lab to be tested. He testified he did not know what was available on the computer. Nor did he know where the computer was at the time he testified. He did not remember receiving a report on the examination of the computer.

### Discovery of Computer

When the trial began, the State could not locate Appellant's family computer. But after the second day of trial, the Sheriff's Office contacted the prosecution to say that it had found out that when the search warrant for the laptop had been executed in 2017, the Sheriff's Office had sent the laptop to the Irving Police Department for forensic examination and requested that the scope of that examination be limited to pornography of any kind, including child exploitation. After the Irving police provided a mirrored hard drive of the laptop, limited to the scope of the forensic examination, to Young County, the laptop itself was inadvertently misplaced. In August 2017, the Irving Police Department had apparently generated a report from its forensic examiner to the Young County Sheriff's Office and notified its Chief Deputy of the results, but neither that report nor the laptop itself had, in turn, been forwarded to the District Attorney's Office or to Appellant prior to trial. Consequently, the State's attorneys, while aware of the laptop's seizure, were unaware that the laptop had been examined and that a forensic report had been generated.

The attorneys for both sides apparently first learned of the forensic examination and report when Bay testified at trial. As Appellant explains, "The

5

State's attorneys were unaware of the snafu until April 8, 2019 in the middle of trial. When they learned of the problem, State's attorneys immediately notified the trial court and appellant's [sic] trial counsel." Upon learning of the examination and report, Appellant's counsel filed various motions with the trial court including a verified, combined motion for mistrial, dismissal, and continuance to allow time to investigate the newly discovered evidence. On April 10, 2019, the trial court denied Appellant's motion for mistrial and dismissal but ordered the appointment of a forensic expert to examine the laptop's contents on Appellant's behalf. The court also ordered that the laptop be delivered from the Irving Police Department to that forensic expert, and the trial court granted a continuance "until April 24, 2019 or until further order of the Court" to allow time to comply with its orders.

However, at a hearing on April 15, 2019, the trial court said that it intended to reconvene trial the next day because at least one and possibly two jurors would not be available if the trial were delayed any further. The trial court also re-heard Appellant's motion for mistrial, dismissal, or continuance. The State announced it had not complied with the order to deliver the laptop to Third Chair Digital Forensics, LLC because on the State's review of the evidence contained in the laptop's hard drive, the prosecutor concluded, "[C]ertain images that cannot definitively be classified as nonchild pornography" were discovered.

The State's attorney further explained to the trial court and defense counsel that the lab tech who had examined the laptop for the State had expressed

"reservations about the hard drive being put in the hands of a non-law[-]enforcement agency," apparently because of the presence of possible child pornography. In response to those concerns, the State indicated that it had asked the Irving Police Department lab tech to "mirror" the entire hard drive for defense counsel and to prepare a report on its findings as well.

Defense counsel asserted that according to the Irving Police Department's final report, Defendant's Exhibit 5, "[t]hey did not find child pornography on that computer." Among other defense objections at the hearing on April 15, Appellant objected to the State's failure to comply with the trial court's discovery order on the basis of Article 39.14 of the Texas Code of Criminal Procedure.[2] Appellant asserted that the laptop held the potential for either impeachment or exculpatory evidence and that further forensic examination was required pursuant to the trial court's order of April 10, 2019.

Thus, as of the April 15 hearing, the forensic expert appointed by the trial court on April 10 had still not had the opportunity to examine the computer. The trial court denied counsel's renewed motions and opted instead to allow defense counsel an opportunity to view the mirrored hard drive overnight.

Appellant's counsel argued that he knew little or nothing about computers and needed his expert's assistance. He also pointed out that, although the State's trial

---

[2]Tex. Code Crim. Proc. Ann. art. 39.14(a).

counsel might not have known of the hard drive's location or of the report already prepared by the police forensic investigator, the knowledge of members of the two police departments was imputed to her.

Appellant's counsel correctly stated,

> Defendant's Exhibit 5 sets out, which is the Irving Police report, a copy of their report. It sets out that it was done for a limited investigation, and I think that there could be materials on there that need a full examination. And the fact that -- well, that I'm supposed to come down here half a day before we resume the court to look at something after I had asked for an expert to do it, I think is pretty ridiculous. I can't do that. I can't make those determinations. It limits my effectiveness to serve him, to serve Mr. Hance, and give him a fair trial.

### Trial Outcome

Trial reconvened the next day, April 16, 2019. The jury convicted Appellant of aggravated sexual assault and assessed his punishment at fifty years' confinement. The trial court sentenced Appellant accordingly. Appellant then filed a motion for new trial setting forth as his grounds the language used here in the sixth issue of his brief:

> The trial court erred by denying Hance's motion for new trial on the grounds that:
>
> A) a "laptop and its contents" were withheld from him until after the start of trial and discussed in two (2) hearings held on Defendant's Motion to Dismiss, Motion for Mistrial, or Motion for Continuance on April 9, 2019 and April 15, 2019;
>
> B) The forensic expert appointed by the trial court on April 10, 2019 was prevented from examining the "laptop and its contents" because of actions by the State in failing to turn the "laptop and its contents" over to said forensic expert.

8

That motion was overruled by operation of law.

Dispositive Complaint

Appellant argues in his fourth and sixth issues that the trial court abused its discretion by denying his verified motions for continuance, mistrial, and new trial because he should have been allowed to have his expert physically examine the laptop before having to continue with trial. He argues in his fifth issue that the trial court abused its discretion by failing to require the State to produce the actual laptop to him for independent examination. We hold that the trial court abused its discretion by denying Appellant's motion for new trial—which complains that the trial court should either have granted a mistrial or continuance rather than reconvening trial on April 16, 2019—when it was discovered that the court-appointed forensic expert was prevented from examining the laptop and its contents as ordered by the court because the State refused to make it available to Appellant's forensic expert.

Standards of Review

We review the trial court's rulings on Appellant's motions for an abuse of discretion.[3] Appellant argues the trial court abused its discretion (1) in failing to require the State to produce Appellant's laptop seized from him by the State pursuant

---

[3]*See Gonzalez v. State*, 616 S.W.3d 585, 594 (Tex. Crim. App. 2020) (new trial), *cert. denied*, 142 S. Ct. 436 (2021); *Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009) (mistrial); *Gallo v. State*, 239 S.W.3d 757, 764 (Tex. Crim. App. 2007) (continuance).

9

to a search warrant to allow him to determine whether the laptop contained evidence material to any matter involved in this action and (2) in reconvening the trial before such an examination could occur.

Applicable Law

Article 39.14(a) of the Texas Code of Criminal Procedure provides in pertinent part,

> [A]s soon as practicable after receiving a timely request from the defendant the state shall produce and permit the inspection and the electronic duplication, copying, and photographing, by or on behalf of the defendant, of any . . . designated books, accounts, letters, photographs, or *objects or other tangible things* not otherwise privileged that constitute or contain evidence *material to any matter* involved in the action and that are in the possession, custody, or control of the state or any person under contract with the state. . . .[4]

Additionally, and independent of the Article 39.14(a) statutory right to discovery, an accused person is also protected by the constitutional right of access to exculpatory evidence explained in *Brady v. Maryland*.[5]

Summary

In the approximately twenty months between Appellant's arrest and his trial, the Young County Sheriff's Office seized his family computer, examined it forensically, and obtained an examination report but failed to provide that

---

[4]Tex. Code Crim. Proc. Ann. art. 39.14(a) (emphasis added); *see Watkins v. State*, 619 S.W.3d 265, 277 (Tex. Crim. App. 2021) (describing Article 39.14(a) after Michael Morton Act as "revamped . . . completely").

[5]*Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194 (1963).

information or the report either to the prosecution or to Appellant. The purpose of the State's seizing and examining the computer was to locate evidence of "pornography of any kind (to include child exploitation materials, adult pornography, and pornography depicting incest), evidence of the possession or transmission of such materials and depictions of the victim in sexualized or inappropriate photos or videos." When the trial judge ordered the State to turn over the computer's hard drive to the defense expert, the State decided the court's order was infirm and should not be complied with. Images of child pornography cannot be turned over to persons who are not part of law enforcement.[6] But the prosecuting attorney did not raise this objection when defense counsel asked the trial court to order the computer's delivery to Appellant's forensic expert.[7] Instead, she later acquiesced to the police forensic examiner's determination that it should not be turned over.

As Appellant pointed out to the trial judge, this decision to refuse to comply with the court's order did not occur in 2017 when the State's report was generated. It occurred mid-trial. Although this report was created by the police expert in 2017, it was never provided either to the prosecution attorneys or to Appellant. Indeed, the prosecution had no idea where the computer was or that it had been examined

---

[6] *See* Tex. Penal Code Ann. § 43.26(h).

[7] *See* Tex. Code Crim. Proc. Ann. art. 39.14(a) ("This article does not authorize the removal of the documents, items, or information from the possession of the state, and any inspection shall be in the presence of a representative of the state.").

11

forensically. But the law imputes the knowledge of the police to counsel for the State. "The rule is well established that the knowledge of one part of the prosecution team is imputed to all members of the prosecution team."[8]

Not only did the State unilaterally refuse to comply with the trial court's order, the trial court's original decision to continue the trial to April 24, 2019, was set aside because at least one and possibly two jurors had expressed they might be unavailable the week of April 24, and because the trial court did not want to declare a mistrial because of losing jurors. The trial judge ordered the lawyers to proceed with the trial the following day, despite the fact that Appellant's expert had been denied access to the computer.

The State had examined the computer, and the State had already presented some of the computer's contents to the jury (via testimony from AM) as evidence that Appellant was invested in child-role-playing pornography and had researched the indications that a very young child was being sexually abused. The record clearly supports Appellant's argument that the information on the laptop's hard drive was relevant[9] and, therefore, that denial of his request for his forensic expert to examine

___

[8]*Ex parte Roberson*, 455 S.W.3d 257, 266 & n.3 (Tex. App.—Fort Worth 2015, pet. ref'd) (Dauphinot, J., dissenting) (citing *Rubalcado v. State*, 424 S.W.3d 560, 574 (Tex. Crim. App. 2014); *Ex parte Adams*, 768 S.W.2d 281, 291–92 (Tex. Crim. App. 1989)); *cf. Francis v. State*, 428 S.W.3d 850, 853–56 (Tex. Crim. App. 2014) (discussing former and then-current prosecutor's knowledge of existence of machete and whether either related their knowledge to the defense).

[9]*See Watkins*, 619 S.W.3d at 278, 291.

the computer and denial of sufficient time to examine the computer constituted a denial of counsel and denial of a fair trial. Accordingly, the trial court abused its discretion by continuing the trial rather than giving Appellant the opportunity to examine the hard drive. And because evidence of Appellant's proclivities featured heavily in the trial, and at the time of the laptop's discovery the defense could not unring the bell as to what the jury had already heard, the trial court should have concluded that Appellant had been prejudiced and granted Appellant's new-trial motion.[10]

We therefore sustain Appellant's sixth issue. Because it is dispositive, we need not address his first through third issues or expressly rule on his fourth and fifth issues that raise the same arguments.

<u>Disposition</u>

We reverse the trial court's judgment and remand this cause to the trial court for a new trial.

/s/ Lee Ann Dauphinot
Lee Ann Dauphinot
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: April 21, 2022

---

[10] *See* Tex. R. App. P. 44.2(b); *State v. Herndon*, 215 S.W.3d 901, 909 (Tex. Crim. App. 2007) (new-trial standard); *Oprean v. State*, 238 S.W.3d 412, 415–16 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd).