**Horace Hiawathai WALKER, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–08–00557–CR.**

Court of Appeals of Texas, Houston (1st Dist.).

Oct. 29, 2009.

Discretionary Review Dismissed Aug. 25, 2010.

Christopher H. Warren, Spring, TX, for Appellant.

Michael C. Young, Assistant District Attorney, Conroe, TX, for Appellee.

Panel consists of Chief Justice RADACK and Justices BLAND and MASSENGALE.

## OPINION

JANE BLAND, Justice.

A jury convicted Horace Hiawathai Walker for felony driving while intoxicated, third offense or more. *See* TEX. PENAL CODE ANN. § 49.04 (Vernon 2003). Walker pleaded true to three enhancement paragraphs and the trial court assessed punishment at twenty-five years' confinement. On appeal, Walker contends the trial court erred in admitting a DVD containing an audio recording of an inculpatory statement produced by the State during the trial. We hold that the trial court did not err in admitting the recording and therefore affirm the judgment of the trial court.

## Background

During the evening of July 21, 2007, Texas Department of Public Safety Trooper R. Wolf conducted a traffic stop on Interstate 45 in Montgomery County. While walking from his patrol car to the stopped vehicle, Trooper Wolf noticed a car, driven by Walker, make a drastic lane change from the "fast" lane of traffic into the lane closest to Wolf. Wolf signaled with his flashlight for Walker to either move back into the fast lane or slow down. Just as Walker's vehicle reached Wolf, Walker swerved back into the fast lane, forcing another vehicle off the road and onto the opposite shoulder. Suspecting that Walker might be intoxicated, Trooper Wolf released the individual he previously stopped, caught up to Walker's vehicle, and pulled him over.

After stopping Walker, Trooper Wolf asked Walker to spell his middle name, which he accomplished only after two unsuccessful attempts. Wolf smelled a strong odor of alcohol on Walker's breath and saw that Walker's eyes were red and glassy. Walker submitted to a portable breath test, which indicated the presence of alcohol in his system. Wolf then administered the three standardized field sobriety tests. Walker displayed all six possible clues on the horizontal gaze nystagmus test, six of eight possible clues on the walk and turn test, and three of four possible clues on the one leg stand test. At this point, Wolf placed Walker under arrest, read Walker his *Miranda* rights, and requested a breath specimen. Walker refused, saying that it "was not going to help [Walker] any, it was going to help [Wolf]."

The State indicted Walker for felony driving while intoxicated, third offense or more, on September 13, 2007. On October 18, the trial court entered a discovery order, requiring the State to produce, among other things, "[a]ll written or recorded statements, including video tape recordings, of the defendant, along with all confessions or statements, whether verbal or otherwise, made pursuant to Art. 38.22 [Code of Criminal Procedure]." The State produced a DVD recording to defense counsel of Walker's traffic stop. During trial the following April, the trial judge admitted the DVD recording of Walker's traffic stop, captured by the video camera and audio equipment located in Trooper Wolf's patrol car. While the video played for the jury, the prosecutor asked Wolf to identify the "M–1" and "M–2" notations that appeared on the television screen. Wolf stated that these notations referred to two microphones: the M–1 microphone was located inside the patrol car and Wolf wore the M–2 microphone attached to his uniform. Wolf also explained that the ability to hear both audio feeds depended on whether the television system was config-

ured for two different speakers. If not, the audio from the M–2 microphone would override the audio from the weaker M–1 microphone inside the patrol car, and the M–1 feed would be inaudible. Toward the end of the video, after Wolf placed Walker in the patrol car and attempted to identify the passengers in Walker's vehicle, the video showed one of the passengers walk over to Walker and the two men having a conversation that was inaudible on the DVD. Wolf suggested the problem was the configuration of the television, which did not appear equipped to play both audio feeds simultaneously.

After finishing Wolf's direct examination and returning from the lunch recess, the prosecutor informed defense counsel and the trial judge that, during Wolf's testimony, he discovered that the admitted DVD exhibit only contained the audio from the M–2 microphone. The M–1 audio feed on the original DVD recording given to defense counsel pursuant to the trial court's discovery order was present but inaudible due to the stronger M–2 feed and the television configuration. The prosecutor proposed creating a new DVD containing only the M–1 feed from the interior of the patrol car, providing that recording to defense counsel for review and to confirm that all previously agreed-upon redacted information was correctly redacted from the new version, and then offering the new recording into evidence. The prosecutor noted that the audio of the new DVD contained a statement by Walker to his fellow passenger sarcastically telling him to thank another passenger for "letting [Walker] get so drunk." Defense counsel objected on the ground that the prosecutor did not provide this information in a readily accessible form during the discovery period. At this point, the trial judge deferred ruling on the admissibility of the new recording until after the prosecutor

provided a copy and gave defense counsel an opportunity to review it.

After cross-examination of Trooper Wolf, the prosecution tendered a redacted version of the M–1 audio feed. In response to defense counsel's statement that she had yet to hear the M–1 feed, the trial judge proposed finishing the redirect examination of Wolf before determining how to proceed with the new recording. Upon finishing redirect, the court took a twenty minute recess to allow defense counsel time to review the recording. When trial reconvened, the prosecution formally offered the recording of the M–1 audio feed. Defense counsel objected:

> My one objection to this would be even though we have agreed on the redactions and even though it was on the videotape—or the DVD that I received prior to today's trial and during the discovery period, I would still object to the production of this evidence as I have not had the chance to react to it. And it is almost tantamount to an ambush in this case; and the fact that it's coming forth after the discovery period is over.

The prosecutor responded that the State produced the recording during the discovery period, and:

> Since counsel is aware of the contents of this statement and was essentially provided with it—we thought the microphone didn't capture it. The only development here is the microphone did capture it. Even if it hadn't been captured on microphone we would have been able to call the trooper to say he said it.

The prosecutor also noted that Trooper Wolf included Walker's statement in his offense report, which was made available to defense counsel as part of the prosecutor's open file policy. The trial court overruled defense counsel's objection and admitted the recording. The jury found

Walker guilty of felony driving while intoxicated, third offense or more, and after Walker pleaded true to three enhancements related to prior DWI and aggravated assault convictions, the trial court assessed punishment at twenty-five years' confinement.

### Discussion

■■■ Walker contends that the trial court erred in admitting the M–1 audio feed recording because the prosecution did not produce this recording in a readily accessible form until trial, in violation of the court's discovery order. We review a trial judge's decision to admit or exclude evidence for abuse of discretion. *Green v. State*, 934 S.W.2d 92, 101–02 (Tex.Crim. App.1996). Unless the trial judge's evidentiary decision is outside the "zone of reasonable disagreement," we uphold the ruling. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex.Crim.App.1991). When the trial judge makes a finding of fact based on the evaluation of credibility and demeanor, we defer to that finding. *See Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim.App.1997). When the trial judge does not make explicit findings of fact, we "view the evidence in the light most favorable to the trial court's ruling and assume that the trial court made implicit findings of fact that support its ruling as long as those findings are supported by the record." *State v. Ross*, 32 S.W.3d 853, 855 (Tex.Crim.App.2000).

■■■ When the trial court admits evidence offered by the State that was not produced in compliance with a discovery order, the relevant inquiry is whether the prosecutor acted with the specific intent to willfully disobey the discovery order by failing to turn over the evidence. *Oprean v. State*, 201 S.W.3d 724, 727 (Tex.Crim. App.2006); *see also Hollowell v. State*, 571 S.W.2d 179, 180 (Tex.Crim.App.1978)

("[E]vidence willfully withheld from disclosure under a discovery order should be excluded from evidence."). A prosecutor's actions may be extremely negligent or even reckless, but that conduct must rise to the level of willfulness to require exclusion of the evidence. *See State v. LaRue*, 152 S.W.3d 95, 97 (Tex.Crim.App.2004). We infer from the prosecutor's actions and words whether the prosecutor had the specific intent to willfully disobey the discovery order. *See Oprean*, 201 S.W.3d at 728. In determining if the prosecutor acted willfully, we consider whether the record indicates that (1) the prosecutor intended to harm the defense, (2) the prosecutor's actions were a strategic and purposeful effort to thwart the defense's preparation of its case, or (3) the prosecutor consciously decided to violate the plain directive of the discovery order. *See id.* at 727, 728 (holding that prosecutor willfully violated discovery order when, after specifically telling defense counsel that she would only present sentences and judgments during the sentencing phase the next morning, she introduced video recording of one of defendant's prior offenses). We also consider the validity of the prosecutor's rationale and explanation for violating the discovery order, as well as whether the prosecutor suddenly discovered the evidence such that compliance with the terms of the discovery order was impossible. *See id.* at 727–28.

■■■ The record indicates that the State was unaware of the M–1 audio feed until Trooper Wolf pointed out the absence of the feed during his direct examination. When the State introduced the original DVD recording, the prosecutor asked Wolf if the jury could hear both the audio from his microphone and the microphone located in the patrol car. Wolf responded that this would be possible "[i]f the TV system is set up for two different speakers. Some are not. If I have the M–2 on you will

never be able to hear the inside of the car." At the point in the video where Walker's passenger approached the patrol car to converse with Walker, Wolf again commented on the lack of audio from the M–1 microphone, mentioning that the television must be configured in a certain way to hear both audio feeds. When later discussing the problem with defense counsel and the trial judge, the prosecutor stated that he "probably would have known how to extract [the M–1 feed] had [he] known it was there." This evidence does not indicate that the prosecutor knew the M–1 audio track existed on the original DVD recording and willfully concealed this fact from defense counsel until trial was underway.

Upon learning of the matter during Trooper Wolf's direct examination, the State brought it to the attention of defense counsel and the trial court. The State proposed making a separate DVD recording of the M–1 feed only, providing that recording to defense counsel, and ensuring the removal of redacted material from this new recording prior to its introduction to the jury. The prosecutor pointed out that defense counsel had knowledge of the substance of the M–1 feed, since Trooper Wolf included Walker's comment in his offense report, which was available to defense counsel under the open file policy. The prosecutor promptly informed defense counsel and the trial judge upon completion of the new recording and repeatedly mentioned his desire for defense counsel to review the recording to check the redac-

tions. These actions are not consistent with intent to harm the defense, thwart the defense's preparation of its case, or consciously violate the discovery order. Here, the trial court admitted the M–1 recording, and thus implicitly found that the prosecution did not willfully withhold the evidence. The trial court also gave defense counsel an opportunity to object and make redactions to the audio. Finally, the State produced the substance of the inculpatory statements in the officer's report before the discovery deadline. For these reasons, we hold that the trial court did not abuse its discretion by admitting the recording of the M–1 audio feed.[1]

Walker notes that, in her concurring opinion in *Oprean,* Judge Cochran suggests that withheld evidence may be inadmissible, even if the prosecutor does not willfully violate the discovery order, if withholding the evidence violates the defendant's due process right to adequate notice. *See Oprean,* 201 S.W.3d at 729 (Cochran, J., concurring). She observed that allowing a short delay or recess to review the new evidence and formulate a defensive strategy protects this right. *See id.* at 730. Here, the trial court delayed ruling on the admissibility of the recording until after a twenty-minute recess, which provided defense counsel an opportunity to view the recording and prepare a defensive strategy. This recess, coupled with the prosecutor's timely production of Wolf's offense report, which contained the statement, protected Walker's due process right to adequate notice.[2]

---

1. Walker also contends that "[t]he recording of Appellant in the back seat of Trooper's Wolf's [sic] vehicle was in fact Article 38.22 material that was not provided until the second day of Appellant's trial." As the State notes, Article 38.22 only applies to written or oral statements made as a result of custodial interrogation. *See* TEX CODE CRIM. PROC. ANN. art. 38.22, §§ 2, 3 (Vernon 2005). Although

Walker was under arrest when he made the relevant statements to his passenger, these statements were not made in response to interrogation. Trooper Wolf was not present in the vehicle at the time.

2. Even if the trial court erroneously admitted the M–1 recording, Walker must show harm to require reversal. *See Cooks v. State,* 844

## Conclusion

We hold that the trial court did not abuse its discretion in admitting the M–1 recording. We therefore affirm the judgment of the trial court.

S.W.2d 697, 734 n. 31 (Tex.Crim.App.1992) (citing *Hollowell v. State*, 571 S.W.2d 179, 180 (Tex.Crim.App.1978)). We note that, at the time the State offered the M–1 recording, defense counsel neither requested a recess nor moved for a continuance. Defense counsel's "failure to request postponement or seek a continuance waives any error urged in an appeal on the basis of surprise." *Lindley v. State*, 635 S.W.2d 541, 544 (Tex.Crim.App. 1982); *see also Oprean v. State*, 201 S.W.3d 724, 730 n. 10 (Tex.Crim.App.2006) (Cochran, J., concurring) ("Thus, the trial court may always exclude the undisclosed evidence, but if he does not, any error in causing 'surprise' to the defense is forfeited on appeal unless the defendant has also requested a postponement or recess.").