In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-14-00419-CR**
**NO. 09-14-00420-CR**
**NO. 09-14-00421-CR**
**NO. 09-14-00422-CR**

_____

**GUADENCIO AGUILAR MEJIA, Appellant**

**V.**

**STATE OF TEXAS, Appellee**

**On Appeal from the 9th District Court**
**Montgomery County, Texas**
**Trial Cause No. 14-04-04489 CR (Counts 1, 2, 3, 4)**

**MEMORANDUM OPINION**

Appellant Guadencio Aguilar Mejia appeals his convictions for the offenses of sexual assault of a child and indecency with a child by contact. In four points of error, Mejia challenges his convictions. We affirm.

1

## Background

C.W.[1] was born in Honduras. When she was fifteen years old, she moved to the United States and began living with different relatives, including Mejia, her uncle. C.W. testified at length regarding the sexual abuse she endured by Mejia while living with him and her aunt. The jury found Mejia guilty of three counts of sexual abuse of a child and one count of indecency with a child by sexual contact. The jury assessed Mejia's punishment for the sexual assault convictions at imprisonment for sixteen years for Count 1, seven years for Count 2, and sixteen years for Count 3. The jury assessed Mejia's punishment for Count 4, the indecency with a child by sexual contact conviction, at three years imprisonment. The trial court ordered the sentences to run consecutively. Mejia appealed the trial court's judgment.

## Limited Cross-Examination

In his first point of error, Mejia contends the trial court erred when it limited his cross-examination of C.W. regarding her immigration status. Specifically, Mejia contends the trial court's exclusion of this evidence deprived him of his constitutional right to present a complete defense under the Fourteenth Amendment. He also contends the trial court's ruling violated his right to confront

---

[1] To protect the victim's identity, we use an alias. *See McClendon v. State*, 643 S.W.2d 936, 936 n. 1 (Tex. Crim. App. [Panel Op.] 1982).

witnesses under the Confrontation Clause of the Sixth Amendment to the United States Constitution and article I, section 10 of the Texas Constitution. Mejia argues this testimony was necessary to establish C.W.'s motive for fabricating the allegations against him and to impeach her credibility. The State responds that Mejia failed to preserve this error for appellate review.

Defense counsel sought to cross-examine C.W. about her immigration status. During a bench conference, defense counsel informed the trial court that he would like to question C.W. about her immigration status and the pendency of her immigration petition. Defense counsel argued the evidence was relevant to show that C.W. had a "possible motive to lie." The State responded that it believed C.W. was in the United States legally and that the questions regarding her citizenship were not relevant. The trial judge ruled that he would consider defense counsel's evidence *in camera* before allowing the testimony. Defense counsel informed the court that he had no documentary evidence to support his concerns regarding C.W.'s citizenship and that he was only relying on things the family had told him. He admitted that he had been unable to confirm the family's allegations. The trial court found the testimony was highly prejudicial and ruled it inadmissible "[a]t this time[,]" but the court explained that he might change his ruling if "family members take the stand" and counsel is able to present credible evidence supporting the

3

accusation. The record reflects that defense counsel did not call any family members to testify about C.W.'s immigration status. And, defense counsel did not attempt to cross-examine C.W. on this issue again.

As noted above, Mejia complains that the trial court violated his constitutional right to present a complete defense when it refused to permit him to cross-examine C.W. on her immigration status. At trial, defense counsel argued that the evidence of C.W.'s immigration status was relevant to his theory that she had a "possible motive to lie[,]" but he did not cite to any rules of evidence, cases, or constitutional provisions to support his contention that the evidence was admissible. Mejia did not assert that the trial court's limitation of his cross-examination of C.W. amounted to a violation of his constitutional right to present a defense. Because Mejia failed to object to the exclusion of the testimony based on his constitutional right to present a defense, we conclude Mejia has failed to preserve this complaint for appellate review. *See Broxton v. State*, 909 S.W.2d 912, 918 (Tex. Crim. App. 1995) (concluding appellant waived his federal constitutional due process rights when he failed to lodge an objection at trial); *Wright v. State*, 374 S.W.3d 564, 575-76 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd) (concluding appellant did not preserve issue for review when appellant

4

failed to specifically assert in the trial court that the evidentiary rulings violated her constitutional right to present a defense).

Mejia also complains that the trial court violated his constitutional right to confront witnesses when it refused to permit him to cross-examine C.W. on her immigration status. A defendant must preserve error in the trial court to argue on appeal that his right to confront witnesses was violated. *Anderson v. State*, 301 S.W.3d 276, 280 (Tex. Crim. App. 2009); *Deener v. State*, 214 S.W.3d 522, 527 (Tex. App.—Dallas 2006, pet. ref'd). To preserve error on Confrontation Clause grounds, a defendant must make a sufficiently specific objection on that basis. *Reyna v. State*, 168 S.W.3d 173, 179-80 (Tex. Crim. App. 2005). Defense counsel did not argue that the Confrontation Clause demanded that he be given the opportunity to cross-examine C.W. regarding her immigration status. Defense counsel stated that the evidence was relevant to C.W.'s "possible motive to lie." Rule 611(b) of the Texas Rules of Evidence provides that, "[a] witness may be cross-examined on any relevant matter, including credibility." Tex. R. Evid. 611(b). Certainly, evidence of a "motive to lie" could potentially affect a witness's credibility; as such, Rule 611(b) could possibly serve as the basis for Mejia's trial objection. *See id*. It is also possible that defense counsel could have been relying upon the Confrontation Clause in questioning the truthfulness of C.W.'s testimony.

5

*See Reyna*, 168 S.W.3d at 179. However, at no point in time did defense counsel clarify or otherwise articulate that he was objecting to the trial court's ruling regarding the admissibility of the testimony based upon the Confrontation Clause. "When a defendant's objection encompasses complaints under both the Texas Rules of Evidence and the Confrontation Clause, the objection is not sufficiently specific to preserve error." *Id.* Thus, Mejia failed to clearly articulate his position regarding the Confrontation Clause to the trial court and deprived the trial court of the opportunity to rule upon its admissibility based upon Mejia's rationale. *See id*. Because Mejia failed to lodge a specific complaint based on the Confrontation Clause during the cross-examination of C.W., we conclude he has failed to preserve his complaint based on the Confrontation Clause for appellate review. *See Anderson*, 301 S.W.3d at 280.

Even if Mejia had preserved these issues for review, we do not find the trial court abused its discretion in excluding this testimony. We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Sauceda v. State*, 129 S.W.3d 116, 120 (Tex. Crim. App. 2004). An abuse of discretion occurs when the trial court acts without reference to any guiding rules or principles. *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990).

6

From our reading of the record, it appears that the trial court's ruling was based either on the application of the Rules of Evidence or the Confrontation Clause. *See* Tex. R. Evid. 401 (defining relevant evidence to include evidence having any tendency to make a fact of consequence in determining the action more or less probable than it would be without the evidence), 402 (providing that irrelevant evidence is not admissible), 403 (allowing for relevant evidence to be excluded if its probative value is substantially outweighed by a danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence); *Lopez v. State*, 18 S.W.3d 220, 222 (Tex. Crim. App. 2000) (explaining that the trial court maintains broad discretion to impose reasonable limits on cross-examination and that "[i]n weighing whether evidence must be admitted under the Confrontation Clause, the trial court should balance the probative value of the evidence sought to be introduced against the risk its admission may entail."). Here, the trial court found the testimony was not relevant. The court further found that without sufficient substantiation, any testimony concerning the nature of C.W.'s immigration status would be highly prejudicial, and the prejudicial nature of the testimony would outweigh any potential relevance. *See* Tex. R. Evid. 403; *Lopez*, 18 S.W.3d at 222. Mejia's counsel admitted that he had been unable to verify the claims Mejia's family told him

7

about C.W.'s immigration status. The trial court informed Mejia's counsel that he would reconsider his ruling if those family members testified and provided credible evidence suggesting an issue with C.W.'s immigration status. However, Mejia did not present any evidence to substantiate the claims regarding C.W.'s immigration status, and the questions Mejia sought to ask would constitute nothing more than a mere fishing expedition with a substantial prejudicial effect. As such, we find no abuse of discretion in the trial court's ruling.

We overrule Mejia's first point of error.

**Motion for New Trial Hearing**

In his second point of error, Mejia contends the trial court erred in denying his *pro se* motion for new trial without first conducting a hearing. According to Mejia, he filed a timely *pro se* motion for new trial alleging ineffective assistance of counsel because his trial counsel failed to inform him of a plea offer and failed to present expert witness testimony on his behalf. The State responds that Mejia failed to request a hearing and thus, failed to preserve this issue for review.

A defendant does not have an absolute right to a hearing on a motion for new trial. *Rozell v. State*, 176 S.W.3d 228, 230 (Tex. Crim. App. 2005). If a defendant wants a hearing on a motion for new trial, the defendant must request one. *Id.* The "reviewing court does not reach the question of whether a trial court

8

abused its discretion in failing to hold a hearing if no request for a hearing was presented" to the trial court. *Id*.

Here, Mejia filed a *pro se* motion for new trial. Although Mejia now claims he was denied a hearing on his motion, there is nothing in the record to indicate that Mejia presented his motion with a request for a hearing. Therefore, any alleged error in the trial court's failure to hold a hearing was not preserved for our review. *Id*. at 231.

We overrule Mejia's second point of error.

## Violation of the Discovery Order

In his third point of error, Mejia contends the trial court erred in allowing the State's DNA expert witness to testify over defense counsel's objection that the State violated the trial court's discovery order in failing to give notice of the content of its DNA expert's expected testimony. Mejia contends that he could not have anticipated the subject and content of the expert witness's testimony, and the State acted in bad faith in failing to disclose the information concerning the witness.

The trial court's standing discovery order included an order that the State produce "[a] list of the names, addresses and professions of all expert witnesses the prosecution intends to call at trial, along with each expert's qualifications, the

subject and a description of his or her contemplated testimony, and his or her report." In the State's original response to discovery, it identified John Jackson as a "Forensic Scientist[,] DPS-Crime Lab[,] Designated Analyst, Criminalist and/or Toxicologist and/or Designated Representative and/or Custodian of Records[.]" Defense counsel also received a copy of Jackson's DNA report, which was admitted into evidence, and the file from DPS. In describing the results of two of the samples tested, Jackson's DNA report states,

> The DNA profile is consistent with a mixture. Guadencio Mejia cannot be excluded as the contributor of the major component in this profile. The probability of selecting an unrelated person at random who could be the source of the major component of this profile is approximately 1 in 2.036 septillion for Caucasians, 1 in 4.456 septillion for Blacks, and 1 in 6.840 sextillion for Hispanics. To a reasonable degree of scientific certainty, Guadencio Mejia is the source of the major component of this profile (excluding identical twins). Due to the low level of data present above our analysis threshold, no comparisons will be made to the minor component.

At trial, defense counsel objected to Jackson's testimony on the basis that the State did not notify defense counsel of Jackson's intent to testify about the degradation of DNA evidence and the "impact it could have on the existence of other DNA that might have been there." Defense counsel argued that the DNA report did not put him on notice that Jackson would testify as to the "details of how to interpret any unknown or how to interpret that mixture and what could have happened to the components of that mixture." Defense counsel complained that because the State

10

did not give him sufficient notice of the content of Jackson's testimony, he was unable to prepare for trial. The State responded that its disclosure in conjunction with Jackson's DNA report and the DPS's file was sufficient to provide defense counsel with adequate notice of the scope of Jackson's testimony. The trial court overruled Mejia's objection.

On appeal, the State initially argues that the trial court's standing discovery order is void as it exceeds the trial court's authority. The State relies on an unpublished opinion of the Court of Criminal Appeals in support of its contention. *See generally In re Stormer*, No. WR-66865-01, 2007 WL 1783853, at \*2-3 (Tex. Crim. App. June 20, 2007) (orig. proceeding) (per curiam) (not designated for publication). In *Stormer*, the Court of Criminal Appeals reviewed an identical provision to that at issue in this case. *See id*. at \*2. The Court ultimately concluded that the scope of the provision of the trial court's order exceeded the authority granted to the trial court under Texas Code of Criminal Procedure art. 39.14(b) because that statute requires only the disclosure of the names and addresses of persons that the party may call to testify and the facts and data that underlie an expert witness's opinion. *Id.*[2]

---

[2] We note the offenses in this case are alleged to have occurred in 2012. The Legislature amended article 39.14 of the Texas Code of Criminal Procedure in 2013 and 2015. Consequently, the amended version of this statute is not applicable.

11

In direct reply to Mejia's issue on appeal, the State argues that there is no evidence that the State actually withheld any evidence in this case and that Mejia mischaracterized the prosecutor's actions by claiming the prosecutor somehow acted in bad faith in responding to discovery. The State contends the trial court did not abuse its discretion in allowing the evidence admitted.

Generally, a court should exclude evidence willfully withheld from disclosure in violation of a discovery order. *Francis v. State*, 428 S.W.3d 850, 854-55 (Tex. Crim. App. 2014) (quoting *Hollowell v. State*, 571 S.W.2d 179, 180 (Tex. Crim. App. 1978)). The Court of Criminal Appeals has explained that the rule requiring the exclusion of evidence in this context is essentially a "court-fashioned sanction for prosecutorial misconduct[.]" *Id.* at 855. As such, the trial court's decision to exclude evidence is based on "'whether the prosecutor acted with the specific intent to willfully disobey the discovery order[.]'" *Id.* (quoting *Oprean v. State*, 201 S.W.3d 724, 727 (Tex. Crim. App. 2006)). Even a prosecutor's extreme negligence or recklessness in failing to comply with a discovery order will not, alone, justify the sanction. *Id.* We review a trial court's ruling to exclude evidence

---

*See* Act of May 14, 2013, 83rd Leg., R.S., ch. 49, § 3, 2013 Tex. Sess. Law Serv. 106, 108 (West) (codified at Tex. Code Crim. Proc. Ann. art. 39.14) ("The change in law made by this Act applies to the prosecution of an offense committed on or after the effective date [January 1, 2014] of this Act. The prosecution of an offense committed before the effective date of this Act is covered by the law in effect when the offense was committed . . . .").

for willful prosecutorial defiance of a discovery order for an abuse of discretion, and will defer to the trial court's ruling if it falls within the zone of reasonable disagreement. *Id.* If there are no findings of fact from the trial court regarding its determinations of credibility and demeanor, we must assume the trial court resolved all fact issues in a way that is consistent with its ultimate ruling if the presumed findings are supported by the record. *Id.*

The record does not include findings of fact or conclusions of law with regard to this issue. Thus, we presume that the trial court resolved any issues of credibility regarding the State's compliance with the court's discovery order in the State's favor. We note the facts in the record pertaining to the State's conduct do not demonstrate a willful violation of the court's order. During the bench conference on this issue, the prosecutor explained their office believed the State had complied with the discovery requirements because it had produced to defense counsel the entire DPS file, all of the raw data, and Jackson's DNA report. As noted earlier, the State identified Jackson as a witness in its original responses to discovery, including that Jackson is a forensic scientist at the DPS Crime Lab. In detailing the contents of the State's file, the State also disclosed that it was in possession of Jackson's DNA Lab Report. Defense counsel notified the State of his experts, including a forensic scientist with expertise in "DNA and the forensic

laboratory analysis thereof, including the interpretation of said analyses[.]" Defense counsel requested the court to order the DPS to turn over all raw data relating to its analysis of the DNA evidence for his expert to review and allow him to adequately prepare for trial. The trial court granted this request and defense counsel admitted to the court that he had received the requested materials.

Mejia complains that the State did not designate Jackson as a DNA expert witness or even as an expert witness but that the State selectively designated other witnesses as either "expert" witnesses or "fact and expert" witnesses. Mejia suggests this is evidence that the State willfully or in bad faith withheld this information. The record, however, gives no indication that this omission was anything more than negligence on the part of the State.

Mejia further contends that "the cumulative and systematic withholding of evidence regarding the prospective experts['] testimonies shows that the State acted in bad faith." However, we first note that there is no indication in the record that the State withheld "evidence." A summary of expected testimony is not "evidence" but rather more akin to argument. *See Wheatfall v. State*, 882 S.W.2d 829, 839 (Tex. Crim. App. 1994) ("The adversarial system permits such summaries by one side during closing arguments, but they are arguments and not admitted as evidence to the jury. Admission of these documents under this theory was clearly

error."); *see also Markey v. State*, 996 S.W.2d 226, 231 (Tex. App.—Houston [14th Dist.] 1999, no pet.) ("[A] mere summary of other evidence already before the jury constitutes no proof of any fact in issue."). Additionally, that the State did not provide the defense with a summary of the anticipated content of its witnesses' testimonies is not evidence of bad faith or willful disobedience. In making the determination of whether a prosecutor willfully disobeyed a court's discovery order, we consider "whether the record indicates that (1) the prosecutor intended to harm the defense, (2) the prosecutor's actions were a strategic and purposeful effort to thwart the defense's preparation of its case, or (3) the prosecutor consciously decided to violate the plain directive of the discovery order." *Walker v. State*, 321 S.W.3d 18, 22 (Tex. App.—Houston [1st Dist.] 2009, pet. dism'd). The fact that the State provided defense counsel with Jackson's report and the full DPS file belies the notion that the State intended to harm Mejia's defense or somehow thwart his attempt to prepare for trial by denying his counsel a summary of anticipated testimony stemming from these very items. We have not been cited to nor have we found any evidence in the record that the prosecutor acted with specific intent to willfully disobey the discovery order. We also note that defense counsel's arguments at trial for suppressing the testimony did not include an

15

allegation that the prosecutor intentionally or willfully withheld the summaries from defense counsel in bad faith.

Based on the record before us, we conclude there is no evidence that the prosecutor purposely violated the trial court's discovery order to harm Mejia in his trial preparation. *See State v. LaRue*, 152 S.W.3d 95, 99-100 (Tex. Crim. App. 2004). We conclude the trial court did not abuse its discretion in refusing to sanction the State by excluding the complained-of testimony.[3] *See Oprean*, 201 S.W.3d at 726. We overrule Mejia's third point of error.

In Mejia's fourth point of error, he contends that the cumulative impact of the errors he asserted in his first three points was so great that reversal is required. Because we have overruled Mejia's first three points of error, his fourth point of error is without merit and it is overruled. Finding no reversible error, we affirm the judgment of the trial court.

AFFIRMED.

_____
CHARLES KREGER
Justice

_____

[3] We note that Mejia did not request a continuance at trial based on surprise, so any appellate complaint of surprise is waived. *See State v. LaRue*, 152 S.W.3d 95, 100 (Tex. Crim. App. 2004); *Barnes v. State*, 876 S.W.2d 316, 328 (Tex. Crim. App. 1994) (holding that any error by the trial court in allowing a witness to testify over a claim of surprise is made harmless if the defendant failed to object or move for a continuance).

16

Submitted on October 19, 2015
Opinion Delivered June 29, 2016

Before McKeithen, C.J., Kreger and Johnson, JJ.