**Opinion issued October 11, 2018**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-18-00107-CR

———————————

**DWAYNE GARDNER, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 174th District Court**
**Harris County, Texas**
**Trial Court Case No. 1530745**

## MEMORANDUM OPINION

The State charged Dwayne Gardner with the felony offense of falsely holding himself out as a lawyer. *See* TEX. PENAL CODE § 38.122. In two enhancement paragraphs, the indictment alleged that Gardner had two earlier convictions in the State of Florida for the felony offense of grand theft, in 1986 and 1996, respectively.

Gardner pleaded "not guilty" to the charged offense and "not true" to both enhancement paragraphs.

A jury found Gardner guilty. Gardner elected to have the trial court decide his punishment. Based on the State's evidence of Gardner's two earlier felony convictions, the trial court found the enhancement paragraphs to be true, and it sentenced Gardner to 43 years' imprisonment.

Gardner appeals the trials court's rulings admitting evidence of his earlier convictions. We affirm.

## BACKGROUND

During the punishment phase, the State proffered three exhibits purporting to be from the Florida Department of Corrections. Exhibits 43 and 44 contained certified copies of Gardner's penitentiary packets, showing his two convictions for grand theft. The pen packets included the indictments, judgments of conviction, sentences, custodial commitments, photo identification cards, and several full sets of fingerprints. Exhibit 45 comprised a printout of computer records of Gardner's criminal history. The three exhibits recited that they were "correct copies of documents in the file of Dwayne Keith Gardner," found in the official state records and referenced the same identification number for Gardner. The certification was signed by Charles O. Williams, the custodian of records for the Florida Department of Corrections.

To assist in its proffer, the State called Harris County Deputy Sheriff D. Payavla. Deputy Payavla has 27 years' experience in the crime scene unit as a latent fingerprint examiner. He described the methodologies used in analyzing fingerprints, and he confirmed that the theory underlying latent print comparison is generally accepted in the scientific community, commonly used by law enforcement agencies, and is a reliable method of identification.

In proffering the first pen packet, the State questioned Deputy Payavla:

STATE: Looking at the last page of [Exhibit] 43, . . . does this page have fingerprints?

DEPUTY: Yes.

STATE: And . . . were you able to make a comparison of these prints on the last page of [Exhibit] 43 to the prints that you took from the Defendant in the courtroom today?

DEPUTY: Yes.

STATE: And . . . what was the conclusion of your comparison?

DEPUTY: I compared the right thumb to the ink print that I took earlier and determined that they're from the same source.

STATE: And did you initial this last page of [Exhibit] 43 to reflect your analysis?

DEPUTY: Yes.

Before the State tendered the pen packets, Gardner's counsel objected to their admission, contending that the pen packet is "not exemplified. I think [the State]

has certified pen packets, but they're not exemplified saying that from the Secretary of State of Florida that indeed the person who certified it is an official officer of the State court." The trial court deferred ruling until the State's tender but in reviewing the documents, noted that they had "a number of identifying information items, including photographs." After Deputy Payavla's testimony, Gardner made the following objection:

> Your honor, my objection is this, it's from the State of Florida, and there is no Secretary of State certification or exemplification saying that this is indeed the clerk who signed the out-of-state document. This is an out-of-state document. The Court, in my opinion, can't take judicial notice of it without a sign-off on the Secretary of State exemplifying the fact that that clerk, whoever signed it, is indeed a clerk of that particular court or that particular county or jurisdiction.

The State pointed out that the packet contained a state seal and thus was self-authenticating under Texas Rule of Evidence 902. The trial court overruled Gardner's objection.

The State resumed questioning Deputy Payavla:

STATE: [B]ased on your prior review of State's 43, 44 and 45, do they contain common identifying information indicating that these documents all go back to the same person whose fingerprints you compared [to those appearing on] the last page of State's 43?

DEPUTY: Yes, they do.[1]

---

[1]    Deputy Payavla later explained that Exhibits 44 and 45 were not identifiable through fingerprints.

4

Gardner notified the trial court that he raised the same objection to Exhibits 44 and 45 that he raised to Exhibit 43. The trial court overruled Gardner's objection and admitted the exhibits.

## DISCUSSION

On appeal, Gardner contends that the trial court erroneously admitted the State's exhibits proving up his prior convictions because those exhibits do not meet the requirements of Rule 902(1) or Rule 902(2). Specifically, he argues, the penitentiary packets are inadmissible because they lack the Florida state seal, applied and certified by the appropriate agent, which is necessary to make them self-authenticating.

### A. Applicable law

The legal backdrop for Gardner's objection involves the State's burden of proving earlier convictions during the punishment phase. To prove that a defendant has been convicted of a prior offense, the State must show beyond a reasonable doubt that (1) an earlier conviction exists, and (2) the defendant is linked to that conviction. *Haas v. State*, 494 S.W.3d 819, 822–23 (Tex. App.—Houston [14th Dist.] 2016, no pet.). No specific document is required to prove these two elements. *Flowers v. State*, 220 S.W.3d 919, 921 (Tex. Crim. App. 2007). A certified copy of a final judgment and sentence is one form of proof, but the State also may prove an earlier conviction with other documentary evidence that demonstrates both the existence of

5

the earlier conviction and the defendant's identity as the person convicted. *Id.* at 921–22 (citing *Doby v. State*, 454 S.W.2d 411, 413–14 (Tex. Crim. App. 1970)); *see* TEX. CODE CRIM. PROC. art. 37.07, § 3(a)(1) (permitting proof of defendant's "prior criminal record" without elaboration).

Texas Rules of Evidence 901 and 902 provide alternate means for authenticating and identifying evidence. Rule 901 lists methods for authenticating evidence through extrinsic means, such as the testimony of a person familiar the appearance of the writer's handwriting. Pertinent to Gardner's complaint on appeal, Rule 902 describes forms of evidence that is self-authenticating. Rule subpart 902(1) provides that state documents are self-authenticating if they contain a state seal and an officer's attesting signature. TEX. R. EVID. 902(1). Rule subpart 902(2) provides that domestic public documents that are signed and certified but not sealed can be made self-authenticating if, in addition to a state seal and an officer's signature, they bear the signature of "another public officer who has a seal and official duties within that same entity certifies under seal—or its equivalent—that the signer has the official capacity and that the signature is genuine." TEX. R. EVID. 902(2).

We review a trial court's ruling on the admission or exclusion of evidence for an abuse of discretion. *Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011); *Walker v. State*, 321 S.W.3d 18, 22 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd, untimely filed). We will uphold the trial court's ruling unless it falls

6

outside the zone of reasonable disagreement. *Dabney v. State*, 492 S.W.3d 309, 318 (Tex. Crim. App. 2016); *accord Walker*, 321 S.W.3d at 22. If the trial court's evidentiary ruling is reasonably supported by the record and correct on any theory of applicable law, we will uphold the decision. *See State v. Story*, 445 S.W.3d 729, 732 (Tex. Crim. App. 2014); *Tarley v. State*, 420 S.W.3d 204, 206 (Tex. App.—Houston [1st Dist.] 2013, pet. ref'd).

## B.    Preservation of error

The State first responds that Gardner failed to preserve these issues for review. To preserve a complaint of erroneously admitted evidence, a party must make a timely specific objection and obtain a ruling from the trial court. TEX. R. APP. P. 33.1(a); *Martinez v. State*, 98 S.W.3d 189, 193 (Tex. Crim. App. 2003). The purpose of requiring a specific objection in the trial court is twofold: (1) to inform the trial court of the basis of the objection and give it the opportunity to rule, and (2) to give opposing counsel the opportunity to respond. *Resendez v. State*, 306 S.W.3d 308, 312 (Tex. Crim. App. 2009). A party "must be specific enough so as to 'let the trial [court] know what he wants, why he thinks himself entitled to it, and do so clearly enough for the [trial court] to understand him at a time when the trial court is in a proper position to do something about it.'" *Id.* at 313 (quoting *Lankston v. State*, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992)). If the record demonstrates that the trial court and opposing counsel understood the objection as raising the same issue

7

that the party now urges on appeal, waiver will not result from a general or imprecise objection. *See Resendez*, 306 S.W.3d at 313; *Lankston*, 827 S.W.2d at 909. On the other hand, if the context shows that the appellant failed to effectively communicate his argument, then it is waived. *Rothstein v. State*, 267 S.W.3d 366, 373–74 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd).

An appellant's issue on appeal must comport with the objection he made at trial. *Broxton v. State*, 909 S.W.2d 912, 918 (Tex. Crim. App. 1995). "An objection stating one legal theory may not be used to support a different legal theory on appeal." *Rothstein v. State*, 267 S.W.3d 366, 373 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd). A party fails to preserve error when the contention urged on appeal varies from the complaint made in the trial court. *See Lovill v. State*, 319 S.W.3d 687, 691–92 (Tex. Crim. App. 2009); *Rothstein*, 267 S.W.3d at 373–74.

Gardner objected in the trial court to the Florida Department of Corrections records as lacking authentication because they did not have the Florida Secretary of State's confirmation that the clerk who certified the records "is indeed a clerk of that particular . . . jurisdiction" and thus had the authority to do so. The context of this objection makes apparent that it addressed the means of self-authentication described in Rule 902(1). Nothing in the objection, however, complains of the lack of a seal, as required under Rule 902(1), or takes issue with other means of authentication through extrinsic evidence authorized under Rule 901. We therefore

8

hold that Gardner preserved a challenge under Rule 902(2), but he waived any issue as to whether the State failed to comply with Rule 901 or Rule 902(1).

## C.    Analysis

Gardner contends that the trial could should not have admitted exhibits 43, 44, and 45 because they were not exemplified; that is, no "certifying employee" placed a seal on the "certification pages" of exhibits 43, 44, and 45, which is a necessary predicate to self-authentication under Rule 902.[2]  We need not address the records' admissibility under Rule 902, however, because the State otherwise adduced "evidence sufficient to support a finding that the item is what the proponent claims it is." TEX. R. EVID. 901.

Among other examples of authenticating evidence, Rule 901 suggests a comparison of the proffered evidence "with a specimen that the court has found is genuine." *Id.* 901(3).  Deputy Payavla made such a comparison: he took a copy of Gardner's fingerprints in the courtroom, compared them with the fingerprint copies contained in Exhibit 43, the first pen packet, and confirmed that they were from the same person.  The deputy also confirmed that a cross-referencing of the information

---

[2]    The State informed this Court that each certification page bears an embossed seal, but the seals are not visible on the copies of the exhibits provided in the reporter's record.  The State asked this Court, and we agreed, to have the record supplemented with the original Exhibits 43, 44, and 45, which have the embossed seal of the Florida Department of Corrections on the certification pages.

in Exhibit 43 with that in Exhibits 44 and 45 shows that they all contain common identifying information and thus concern the same person whose fingerprints he compared in Exhibit 43. In its own review of the proffered exhibits, the trial court also could have considered whether the photographs in the pen packets showed a younger Gardner and compared the vital statistics and other information personal to Gardner contained in its own records with the Florida state prison documents to determine that the packets identified Gardner as the defendant identified in the earlier judgments. *See* TEX. R. EVID. 902(3) (suggesting comparison can be by expert witness or trier of fact).

We hold that the trial court did not abuse its discretion in overruling Gardner's objection and admitting Exhibits 43, 44, and 45 as evidence of the existence of Gardner's prior convictions and his identity as the person convicted. *See* TEX. CODE CRIM. PROC. art. 37.07, § 3(a)(1); *Flowers*, 220 S.W.3d at 922.

## CONCLUSION

We affirm the judgment of the trial court.

Jane Bland
Justice

Panel consists of Justices Keyes, Bland, and Lloyd.

Do not publish. TEX. R. APP. P. 47.2(b).

10