**Opinion issued April 20, 2021**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-19-00796-CR

———————————

**FREDDIE LEE JAMERSON, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 371st District Court**
**Tarrant County, Texas**
**Trial Court Case No. 1597524D**

---

## MEMORANDUM OPINION

Appellant Freddie Lee Jamerson was charged with assaulting his wife Gloria

Hyson "by intentionally, knowingly, or recklessly . . . impeding the normal breathing

or circulation of the blood of [ ] Hyson by applying pressure to [her] throat or neck

. . . with [his] hand or arm."[1] The indictment included a habitual offender notice alleging two prior felony convictions. At the end of the guilt-innocence phase of the trial, the jury found Jamerson guilty of the charged offense. Jamerson elected to have his punishment assessed by the trial court and pleaded "true" to the allegations in the habitual offender notice. After a punishment hearing, the trial court sentenced Jamerson to 50 years' confinement. In a single issue on appeal, Jamerson contends the trial court erred by admitting evidence of a subsequent assault during the guilt-innocence phase of the trial.[2]

We affirm.

## Background

On December 15, 2018, Jamerson was staying with Hyson at a motel in Fort Worth, Texas. That evening, Hyson decided to separate from Jamerson due to a history of violence in their two-year relationship. She attempted to leave the motel room. But as she opened the door, Jamerson leaped ahead of her, slammed the door shut, pressed her against an interior wall, placed his hands on her neck, and began to

---

[1]    *See* Tex. Penal Code § 22.01(b)(2)(B); Tex. Fam. Code §§ 71.003, 71.005.

[2]    Pursuant to its docket-equalization authority, the Supreme Court of Texas transferred this appeal to this Court. *See* Misc. Docket No. 19-9091 (Tex. Oct. 1, 2019); *see also* Tex. Gov't Code § 73.001 (authorizing transfer of cases). We researched relevant case law and did not locate any conflict between the precedent of the Court of Appeals for the Second District and that of this Court on any relevant issue. *See* Tex. R. App. P. 41.3.

2

strangle her. He then wrestled her to the bed, where he continued to strangle her. Hyson struggled to breathe and became lightheaded. She believed Jamerson was going to kill her.

A woman in the adjacent motel room heard the struggle and knocked on the door to Jamerson and Hyson's motel room, creating an opportunity for Hyson to flee to her car and call 911.[3] Emergency personnel were dispatched to the motel, but Jamerson left the scene before police arrived. Hyson declined an ambulance because she was able to breathe and felt safe with emergency personnel present.[4]

Officer J. Perez, a Fort Worth Police Department patrol officer, interviewed Hyson at the motel. She told him that Jamerson had strangled her and that this was not the first violent incident between them. Even though he did not observe any visible injury on Hyson's neck, Officer Perez photographed Hyson as part of his investigation. The lack of a visible neck injury did not indicate to him that an assault had not occurred. He observed other signs of strangulation—Hyson had a "raspy" voice and gagged and coughed when she spoke.

Jamerson was charged with family violence assault in connection with the December 15 motel-room assault. At trial, Hyson testified that Jamerson had

---

[3]  The record suggests that Jamerson also may have called 911 or, as Hyson testified, took the phone after she placed the call and spoke with the 911 operator.

[4]  After the police had gone, Jamerson returned to the motel. Hyson did not call the police upon his return because she felt it was an "embarrassing cycle."

3

threatened more than once to kill her if she left the relationship, and she described multiple other incidents of physical violence at Jamerson's hands.[5] Four of these were prior incidents of violence, occurring before the December 15 motel-room assault. She described an incident early in the relationship when Jamerson slapped her after they purchased some curtains for their home. More "extreme" violence occurred next. After she returned from visiting family out of town, Jamerson first threw her against a wall, causing the back of her head to strike and break the drywall, and then threw her to the ground and "started to choke [her]." Hyson lost her voice for at least three days and suffered a bloody lip and eye following that incident. On another occasion, Jamerson struck Hyson in the head. And in November 2018—the month before the motel-room incident—Jamerson struck Hyson in the face with a cell phone, causing her face to swell.[6] Hyson said she thought about leaving Jamerson more than once, but she stayed because he expressed remorse and she wanted the relationship to work.

In addition to these prior incidents of physical violence, Hyson testified about a subsequent incident that occurred three days after the December 15 motel-room

---

[5]    The State gave notice of its intent to offer evidence of these additional incidents—and more than 15 other arrests or convictions for various offenses—during its case-in-chief. TEX. R. EVID. 404(b)(2).

[6]    Hyson's testimony suggests that she obtained a restraining order against Jamerson at some point in the relationship. The record does not reveal the effective date(s) of any prior restraining order.

assault. On December 18, Jamerson approached Hyson outside the house where she stayed after leaving the relationship. She noticed he was "drunk," upset, and had a knife. She testified that, during an ensuing struggle, Jamerson threatened to kill her and tried to injure her with the knife. Again, the police were called. Jamerson used the knife to slash the tires on Hyson's car before the police arrived.

Officer M. Marquez was one of the patrol officers who responded to the December 18 incident, which he described as a domestic-violence call involving a weapon. When Officer Marquez arrived, he saw a man whom he identified in court as Jamerson drop an item along a retaining wall. Officer Marquez recovered the item—a black pocketknife. Jamerson admitted to Officer Marquez that he had cut the tires on Hyson's car, though he claimed the car belonged to him.

Lacy Hensley, a social worker, testified for the State as an expert "in the dynamics of domestic violence with specialized training in strangulation." According to Hensley, only half of people who experience strangulation have visible injuries. An occurrence of strangulation places domestic-violence victims in an especially high-risk category. She explained, "Odds for homicide increase 750 percent for [domestic-violence] victims who have previously been strangled compared to victims who have never been strangled." The most dangerous time in a relationship in which domestic violence occurs is when the victim leaves—"the

5

abuser is losing power and control" and, as a result, tends to become more violent in order to "maintain control in that relationship and prevent the victim from leaving."

Hensley testified that the "cycle of violence" commonly has three phases. First is the "tension-building" phase, which she described as a time during which the "victim [walks] on eggshells" because her partner is easily agitated and she is uncertain what will "set [her] partner off." In the second phase, a physically or verbally abusive event occurs. The final phase is the "honeymoon" phase, when the perpetrator of the violence may promise to change and the victim may feel hopeful that things will improve. Hensley explained that it is common for people in this cycle to stay in the relationship where the violence occurred—sometimes because the person experiencing the violence fears that ending the relationship will provoke the perpetrator to commit deadly violence against her. She opined that a person experiencing domestic violence, on average, attempts to leave the relationship at least seven times before leaving it for good.

**Standard of Review**

We review the trial court's ruling on the admission of evidence for an abuse of discretion. *Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011); *Walker v. State*, 321 S.W.3d 18, 22 (Tex. App.—Houston [1st Dist.] 2009, pet. dism'd). A trial court abuses its discretion if it acts arbitrarily, unreasonably, or without reference to guiding rules or principles. *Montgomery v. State*, 810 S.W.2d 372, 380

6

(Tex. Crim. App. 1990). We will uphold an evidentiary ruling unless it falls outside the "zone of reasonable disagreement." *Tillman*, 354 S.W.3d at 435.

Generally, the erroneous admission of evidence is non-constitutional error, subject to a harm analysis. *Coble v. State*, 330 S.W.3d 253, 280 (Tex. Crim. App. 2010); *Robinson v. State*, 236 S.W.3d 260, 269 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd). Non-constitutional error requires reversal only if it affects the defendant's substantial rights. *See* TEX. R. APP. P. 44.2(b); *Barshaw v. State*, 342 S.W.3d 91, 93–94 (Tex. Crim. App. 2011). The defendant's substantial rights are affected "when the error had a substantial and injurious effect or influence in determining the jury's verdict." *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). We will not overturn a criminal conviction for non-constitutional error if we have fair assurance that the error did not influence the jury or had but a slight effect. *Barshaw*, 342 S.W.3d at 93.

**Extraneous-Offense Evidence**

In his sole issue on appeal, Jamerson contends the trial court erred by allowing the State to elicit testimony recounting the December 18 incident and by admitting the pocketknife recovered by Officer Marquez into the evidence.[7] Specifically,

---

[7] Jamerson frames this issue as whether the trial court abused its discretion "by admitting into evidence . . . a knife that was in [his] possession at the time of his arrest" following the December 18 incident. Reading Jamerson's appellate brief liberally, however, we understand his complaint to include a broader challenge not

Jamerson argues that the challenged testimony and evidence was prohibited extraneous-offense evidence under Texas Rule of Evidence 404(b).

Relying on article 38.371 of the Code of Criminal Procedure, the trial court found the testimony regarding the December 18 incident and the pocketknife were admissible to illustrate the nature of Jamerson and Hyson's relationship. Article 38.371 provides that for certain family violence offenses, including the one for which Jamerson was convicted, evidence of the relationship between the victim and the accused is admissible so long as it is not evidence that is otherwise prohibited by the Texas Rules of Evidence:

> (b) In the prosecution of an offense described by Subsection (a), subject to the Texas Rules of Evidence or other applicable law, each party may offer testimony or other evidence of all relevant facts and circumstances that would assist the trier of fact in determining whether the actor committed the offense . . . , including testimony or evidence regarding the nature of the relationship between the actor and the alleged victim.

> (c) This article does not permit the presentation of character evidence that would otherwise be inadmissible under the Texas Rules of Evidence or other applicable law.

---

just to the admissibility of the pocketknife but also to the testimony recounting the December 18 incident.

To the extent Jamerson's brief can also be read to challenge the admissibility of Hyson's testimony on the physical violence that occurred *before* the charged offense, that complaint has been waived because there was no objection to that testimony at trial. *See* TEX. R. APP. P. 33.1(a) (to preserve a complaint for appeal, appellant must object in trial court and obtain trial court's ruling on the objection). Jamerson's counsel acknowledged that prior incidents of violence would be admissible under article 38.371 of the Code of Criminal Procedure. TEX. CODE CRIM. PROC. art. 38.371.

8

TEX. CODE CRIM. PROC. art. 38.371; *see Foster v. State*, No. 01-17-00537-CR, 2018 WL 1914871, at *3 (Tex. App.—Houston [1st Dist.] Apr. 24, 2018, pet. ref'd) (mem. op., not designated for publication) (article 38.371(c) does not permit presentation of character evidence that otherwise would be inadmissible under Texas Rules of Evidence); *Gonzalez v. State*, 541 S.W.3d 306, 312 (Tex. App.—Houston [14th Dist.] 2017, no pet.) (same). The question is thus whether the trial court's rulings violated Rule 404(b), as incorporated by subsection (c) of article 38.371.

Rule 404(b) generally excludes evidence of other crimes, wrongs, or acts offered for the purpose of proving that a defendant committed the charged offense in conformity with his own bad character. TEX. R. EVID. 404(b)(1); *Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011). There are exceptions. *See* TEX. R. EVID. 404(b)(2). Although evidence of other crimes, wrongs, or acts may show character conformity, extraneous-offense evidence that has relevance may be admissible for other purposes. *Id.*; *Montgomery v. State*, 810 S.W.2d 372, 387–88 (Tex. Crim. App. 1990) (op. on reh'g). Permissible purposes listed in Rule 404(b) include motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. TEX. R. EVID. 404(b)(2). But "this list is not exhaustive." *Garcia v. State*, 201 S.W.3d 695, 703 (Tex. Crim. App. 2006).

The State contends the challenged evidence of the December 18 incident was admissible for two non-character-conformity purposes: (1) to contextualize the

nature of Jamerson and Hyson's relationship, and (2) to rebut Jamerson's defensive theory that Hyson fabricated the motel-room strangulation. As support for its contentions, the State relies primarily on two decisions from our sister court in Fort Worth, the court from which this appeal was transferred, and our sister court in Austin. *See Williams v. State*, No. 02-18-00382-CR, 2019 WL 2223214, at *2 (Tex. App.—Fort Worth May 23, 2019, no pet.) (mem. op., not designated for publication); *Tran v. State*, No. 03-17-00155-CR, 2018 WL 3118464, at *1 (Tex. App.—Austin June 26, 2018, pet. ref'd) (mem. op., not designated for publication).

In *Williams*, the defendant appealed his conviction for causing bodily injury to his mother, contending the trial court erred by allowing the State to elicit the mother's testimony about the defendant having previously assaulted her. 2019 WL 2223214, at *1. At trial, the mother expressed embarrassment over the assaults and stated that she would not have testified against the defendant had the State not subpoenaed her to do so. *Id.* at *2. The appellate court determined that it was "well within the zone of reasonable disagreement for the trial court to have found . . . that the disputed evidence was admissible for a non-character-conformity purpose." *Id.* at *3. Specifically, the trial court could have reasonably concluded that the evidence of the defendant's past assaultive behavior toward the mother was necessary for the jury to understand why she did not want to testify at trial, as well as the nature of her

relationship with the defendant and the defendant's motivation for assaulting her again. *Id.*

The defendant in *Tran*, like Jamerson here, was found guilty of assaulting his wife by strangulation. 2018 WL 3118464, at *1. On appeal, he argued that evidence of a prior arrest for family violence against his wife was inadmissible extraneous-offense evidence under Rule 404(b). *Id.* at *2. The appellate court disagreed, noting there were multiple permissible purposes for admitting the evidence of the prior arrest. *Id.* at *3. The evidence suggested that the assault for which the defendant was on trial was not an accident or mistake. *Id.* In addition, because the wife refused to comply with a subpoena instructing her to appear and testify, the evidence of the prior assault could suggest to the jury that she failed to appear because she was in fear or had been manipulated by the defendant, not because the defendant did not commit the assault. *Id.* Finally, the evidence was admissible to rebut the defense's theory that the defendant had assaulted his wife in self-defense or mutual combat. *Id.*

Beyond these two cases, we recognize a significant body of case law recognizing the special dynamics in family violence cases and the need for this type of evidence. *See, e.g.*, *Nash v. State*, Nos. 02-17-00236-CR, 02-17-00237-CR, 2018 WL 4495440, at *6 (Tex. App.—Fort Worth Sept. 20, 2018, pet. ref'd) (mem. op., not designated for publication) (evidence of defendant's prior violence and

relationship with victim was relevant to explain why victim's trial testimony differed from her statements to police and nurse examiner and was admissible as more than mere character-conformity evidence); *Espinoza v. State*, No. 05-17-00547-CR, 2018 WL 6716619, at *6 (Tex. App.—Dallas Dec. 21, 2018, no pet.) (mem. op., not designated for publication) ("[T]he nature of the victim's relationship with [defendant] and, additionally, [defendant]'s statements that he repeatedly assaulted her in the days prior to the offense were relevant to explain her apparent unwillingness to cooperate with law enforcement and the prosecution."); *Gonzalez*, 541 S.W.3d at 312–13 (defendant's prior conviction for assaulting same complainant was admissible to rebut defensive theory of fabrication and given complainant's reluctance to testify and recantation); *McCleery v. State*, No. 03-17-00154-CR, 2017 WL 4766722, at *6 (Tex. App.—Austin Oct. 20, 2017, no pet.) (mem. op., not designated for publication) (photographic evidence of injuries sustained in a prior assault was admissible for non-character-conformity purpose of rebutting defensive theory of fabrication and providing context for complainant's failure to report for more than one month).

The record in this case is distinguishable from these cases in some respects. For instance, unlike the complainants in *Williams* and *Tran*, Hyson did not refuse to cooperate with law enforcement or the prosecution. At trial, she was firm in her desire to testify against Jamerson, and she did not recant her allegations against him.

But that distinction does not place the trial court's decision to admit the challenged evidence for a non-character-conformity purpose outside the zone of reasonable disagreement.

During opening statements, Jamerson's counsel reminded the jury that the charged offense was impeding Hyson's breath or circulation, and he predicted the evidence would show "there were no visible injuries, no scratching, no bruising, no any sort of redness around [Hyson's] neck." This opening statement may be reasonably understood as calling into question whether Hyson had fabricated the allegation of strangulation. The defense emphasized its theory through cross-examination of multiple witnesses on the lack of visible injury to Hyson.

The State rebutted the defensive theory with testimony from Officer Perez and Hensley that a lack of visible injury did not, in their view, disprove the occurrence of strangulation. It is at least within the zone of reasonable disagreement that the testimony recounting the December 18 assault and the pocketknife recovered by Officer Marquez were admissible for the same non-character-conformity purpose of showing that Hyson's allegation of a strangulation three days before was less likely to be fabricated, particularly given Hensley's testimony that an occurrence of strangulation (as Hyson alleged took place in the December 15 motel-room assault) increases the odds of further, potentially more deadly, violence in a relationship (as Hyson alleged took place in the December 18 assault involving the pocketknife).

13

The challenged evidence thus has some logical relevance aside from character conformity because it rebuts to some extent the defensive claim of fabrication. *See Bass v. State*, 270 S.W.3d 557, 562–63 (Tex. Crim. App. 2008) (case law supports decision that defensive theory presented in opening argument may open door to admission of extraneous-offense evidence); *see also Gonzalez*, 541 S.W.3d at 312 (extraneous-offense evidence admissible to rebut defensive theory that assault never happened); *McCleery*, 2017 WL 4766722, at \*6 (photographic evidence of prior assault was admissible to rebut defensive theory of fabrication). In addition, the context supplied by the evidence of the December 18 assault may have aided the jury in understanding Jamerson and Hyson's relationship as part of the cycle of violence explained by Hensley.

We are not persuaded that the challenged evidence was inadmissible because it concerns an act subsequent to the charged offense. Neither article 38.371 nor Rule 404(b) contains any provision limiting their respective applicability to evidence of prior acts. TEX. CODE CRIM. PROC. art. 38.371; TEX. R. EVID. 404(b); *see, e.g.*, *Santellan v. State*, 939 S.W.2d 155, 168–69 (Tex. Crim. App. 1997) (holding extraneous conduct subsequent to charged offense was admissible under Rule 404(b) for non-character-conformity purpose); *Fernandez v. State*, 597 S.W.3d 546, 565–66 (Tex. App.—El Paso 2020, pet. ref'd) (holding child's testimony involving other assaults by defendant against mother, including assaults occurring after charged

14

offense, was admissible for non-character-conformity purpose under article 38.371); *Corley v. State*, 987 S.W.2d 615, 620 (Tex. App.—Austin 1999, no pet.) (noting there is no *per se* rule as to when extraneous offense is too remote in time to be admissible).

As we have explained, it was at least within the zone of reasonable disagreement that the challenged testimony and evidence was relevant to contextualize the relationship between Jamerson and Hyson and to aid the jury in determining whether assault by strangulation had occurred. We therefore hold that the trial court did not abuse its discretion by admitting the challenged extraneous-offense testimony and evidence.

But even if the trial court had abused its discretion by admitting the challenged evidence of the December 18 incident, our review of the record as a whole does not indicate that the error would be reversible. Error pertaining to the admission of evidence is non-constitutional in nature; thus, it must be disregarded unless it affected substantial rights of Jamerson. TEX. R. APP. P. 44.2(b); *see Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002) ("[S]ubstantial rights are not affected by the erroneous admission of evidence if the appellate court, after examining the record as a whole, has fair assurance that the error did not influence the jury, or had but a slight effect.") (quotation omitted).

Jamerson does not contend that the challenged evidence of the December 18 incident influenced the jury's verdict on guilt or innocence—the unchallenged testimony and evidence from that phase of the trial established the elements of assault family violence, by impeding breath or circulation. *See* TEX. PENAL CODE § 22.01(b)(2)(B). Rather, Jamerson asserts harm is shown by the trial court's assessment of punishment. Jamerson's sentence is within the punishment range for the charged offense, as increased by the enhancement to the habitual offender range of 25 to 99 years or life. *See* TEX. PENAL CODE § 12.42(d). Jamerson pleaded true to the allegations in the habitual offender notice. And at sentencing, the trial court was permitted to consider a wide scope of evidence, including evidence of other crimes, wrongs, or bad acts. TEX. CODE CRIM. PROC. art. 37.07, § 3(a)(1) (relevant evidence at sentencing includes "the prior criminal record of the defendant, his general reputation, his character, an opinion regarding his character, the circumstances of the offense for which he is being tried, and, notwithstanding Rules 404 and 405 of the Texas Rules of Evidence, any other evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant"); *see Payne v. Tennessee*, 501 U.S. 808, 820–21 (1991) (sentencing authority "has always been free to consider a wide range of relevant material").

Even without regard to the December 18 incident, the evidence of other crimes, wrongs, or bad acts which the trial court could consider in assessing

16

punishment was significant. The State presented, without objection, evidence of at least four additional incidents of violence perpetrated by Jamerson against Hyson, including one prior instance involving strangulation. Considering the record as a whole, we have a fair assurance that the evidence of the December 18 incident had but a slight effect on the trial court's assessment of punishment. *See King*, 953 S.W.2d at 273 (complained-of evidence has little to no effect on appellant's substantial rights when it is insignificant or pales in comparison to other, properly admitted evidence).

We overrule Jamerson's sole issue on appeal.

## Conclusion

We affirm the judgment of the trial court.


Amparo Guerra
Justice

Panel consists of Justices Countiss, Rivas-Molloy, and Guerra.

Do not publish. TEX. R. APP. P. 47.2(b).